1
2
3
4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7   LEIA GAREY, | |
| 8                              Plaintiff, | NO. 2:22-CV-0069-TOR |
| 9         v. | ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT |
| 10  TREVOR ANDERSON, an individual; WASHINGTON STATE | |
| 11  UNIVERSITY, a public entity; WASHINGTON BETA CHAPTER | |
| 12  OF SIGMA ALPHA EPSILON FRATERNITY, an unincorporated | |
| 13  association; and SIGMA ALPHAS EPSILON FRATERNITY, INC., a | |
| 14  corporation, | |
| 15                              Defendants. | |

16          BEFORE THE COURT is Defendant Washington State University's

17    (WSU's) Motion for Summary Judgment (ECF No. 58); Defendants Sigma Alpha

18    Epsilon Fraternity's (SAE's) and Washington Beta Chapter of Sigma Alpha

19    Epsilon Fraternity's (Washington Beta's) Joint Motion for Summary Judgment

20    (ECF No. 63); and Plaintiff's Motion for Leave to Supplement the Record (ECF

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 1

1    No. 76).  These matters were submitted for consideration without oral argument.

2    The Court has reviewed the record and files herein and is fully informed.  For the

3    reasons which follow, Defendant WSU's motion for summary judgment (ECF No.

4    58) is **GRANTED** and Defendants SAE's and Washington Beta's motion for

5    summary judgment (ECF No. 63) is also **GRANTED**.  The Court has

6    **ACCEPTED** and considered Plaintiff's supplemental records (ECF No. 76) in

7    resolving these motions.  The remainder of Plaintiff's state law claims against

8    Defendant Anderson are **DISMISSED**.

9                                    **BACKGROUND**

10       This case concerns harassment and sexual assault allegations involving

11    undergraduate students at WSU.  *See generally* ECF No. 21 at 3-8.  Because the

12    issues presented arise in the posture of Defendants' motions for summary

13    judgment, the Court construes disputed facts in the light most favorable to the

14    Plaintiff.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

15       Plaintiff and Defendant Trevor Anderson began a long-distance dating

16    relationship while Plaintiff was a senior in high school and Anderson was a

17    freshman at WSU.  ECF No. 60-1 at 5.  Plaintiff attended a community college in

18    Western Washington her freshman year and Anderson continued to study at WSU.

19    *Id.* at 7.  Plaintiff transferred to WSU her sophomore year in order to be nearer to

20    Anderson.  *Id.* at 19-20.

At WSU, Anderson was a member of Washington Beta Chapter of SAE, a campus fraternal organization. ECF No. 60-1 at 8. Anderson lived in SAE student housing. *Id.* During the long-distance season of their relationship, Anderson frequently hosted Plaintiff at SAE housing on weekends while she was visiting campus. *Id.*

Plaintiff alleges that Anderson subjected her to verbal and physical violence during her stays at the fraternity. She notes two instances of physical violence that occurred in the Washington Beta house, both of which occurred before she matriculated to WSU. ECF No. 60-1 at 12, 22. In the first instance, Plaintiff and Anderson were fighting in his bedroom at SAE and Plaintiff attempted to leave. *Id.* at 21. When Plaintiff did so, Anderson roughly grabbed her arm and pulled her back into the room. *Id.* Plaintiff was able to leave the room and began walking down the hallway. *Id.* As she did so, Anderson picked up a large hallway trashcan and hurled it at her. *Id.* In her deposition, Plaintiff averred that no other fraternity members directly witnessed these events, but that they were loud enough for others to hear. *Id.* at 23.

In the second instance, Plaintiff states that Anderson grew angry when she referred to him as "soft" and pushed her into a metal door at the Washington Beta house. ECF No. 60-1 at 12-13. Plaintiff did not clarify whether any other fraternity members observed or heard this. *Id.* However, her first amended

complaint asserts that Washington Beta members frequently witnessed her and Anderson fighting with each other during fraternity-sponsored events, and that "Anderson was witnessed by other Fraternity members[ ] verbally harassing, yelling, and pushing Plaintiff" during those arguments. ECF No. 21 at 3-4, ¶ 2.7.

Plaintiff also claims that Anderson sexually assaulted her on multiple different occasions throughout the course of their relationship. *See, e.g.*, ECF No. 60-1 at 14-15, 18, 24-25. Two of these assaults took place on the WSU campus in Plaintiff's dorm room. ECF No. 21 at 4, ¶ 2.10; 5, ¶ 2.16; *see also* ECF No. 62-7 at 3.

On January 29, 2019, Anderson went to Plaintiff's dorm room without an invitation. ECF No. 60-1 at 24-25. The two began having consensual sex. *Id.* Midway through, however, Plaintiff withdrew consent and told Anderson to stop because the activity was causing her pain. *Id.* Anderson told her "no" and proceeded to assault her. *Id.* Plaintiff did not report the assault to campus officials until later. *Id.* In the interim, however, she began meeting with student Counseling and Psychological Services and shared with her counselor that Anderson had been stalking and harassing her. ECF No. 21 at 4-5, ¶¶ 2.13-14. She also communicated to Anderson that she no longer wished to see him. *Id.* at 5, ¶ 2.15; ECF No. 60-1 at 26.

Anderson did not take to these requests and continued attempting to visit

Plaintiff at her dorm room without an invitation. ECF No. 21 at ¶ 2.15. On February 7, 2020, Anderson followed Plaintiff from the cafeteria to her dorm building. ECF No. 76-1 at 8-9.[1] Anderson insisted that Plaintiff let him in her dorm room. *Id.* at 9. Plaintiff initially resisted, but ended up relenting on the condition that he sit at a separate desk while she completed a class assignment. *Id.* at 10-11. Once inside, however, Anderson pinned Plaintiff against her bed and raped her. *Id.* Plaintiff went to the Pullman Regional Hospital later that evening to have a rape kit performed, which documented visible injuries. *Id.* at 12; ECF Nos. 21 at 5, ¶ 2.17; 62-7 at 3.

Plaintiff's friends notified Washington Beta that Anderson had assaulted her. ECF No. 60-1 at 29. The Chapter temporarily suspended him and began an internal review of his membership status. ECF No. 62-4 at 3.

On February 11, Plaintiff disclosed to her campus counselor that Anderson had raped her. ECF No. 21 at 6, ¶ 2.18. The next day, on February 12, Plaintiff contacted WSU's Office of Civil Rights Compliance and Investigation (CRCI) to

---

[1] Plaintiff moved for leave to supplement the record with a portion of her deposition transcript. ECF No. 76. WSU took no position as to this. ECF No. 80. The Court accepts the supplemental portion of the declaration, ECF No. 76-1, for purposes of resolving these motions for summary judgment.

report the January 29 and February 7 assaults. ECF No. 60-1 at 49. Plaintiff then left town to visit family from February 12 to 17 over the extended President's Day weekend. ECF No. 59 at 6, ¶¶ 38-40. On February 18, 2020, when Plaintiff returned to campus, she and her attorney met with a CRCI employee and a university police detective. ECF No. 60-1 at 49-50. Plaintiff obtained a temporary Sexual Assault Protection Order the next day, on February 19. ECF No. 21 at 6, ¶ 2.19. During the interim 24-hour period between Plaintiff's meeting with campus authorities and when she obtained the protective order, University police increased patrols of Plaintiff's dormitory building and represented that they would remove Anderson if he was found inside. ECF No. 62-3 at 2.

Two days later, on February 20, WSU suspended Anderson on an emergency basis based on Plaintiff's allegations. ECF No. 62-7 at 3. The suspension proscribed Anderson from attending in-person classes and accessing university services. *Id.* at 5. The notice also attached an admonition trespassing Anderson from all areas of WSU campuses. *Id.* at 7.

On the same day that Anderson was suspended, but before he was notified of that fact, Plaintiff wrote to CRCI expressing concern that Anderson would be in her math class the next day for an in-person quiz and requesting that she be permitted to take the test in the student access center instead of the classroom with other students. ECF No. 62-5 at 2. CRCI responded within the hour and stated

that they had notified the Dean of Students Office, which would make alternative arrangements for Plaintiff. ECF No. 62-6 at 2. Ultimately, however, Anderson was served with notice of his suspension and trespassed from campus before the math class took place. ECF No. 62-7 at 2. WSU also moved Plaintiff to a separate dorm building. ECF No. 60-1 at 3. Approximately one week after receiving notice of his suspension, Anderson informed WSU that he was withdrawing from his courses and transferring schools. ECF No. 69 at 3, ¶ 15. Anderson later pled guilty to fourth degree domestic violence and harassment with domestic violence against an intimate partner. *See* ECF Nos. 40 at 5-6; 42 at 2-3.

Plaintiff was not the only victim of Anderson's alleged sexual misconduct at WSU.[2] In April 2018, the WSU Office for Equal Opportunity (OEO)[3] investigated Anderson for the reported rape of Jane Doe, another WSU student.[4] ECF No. 61-1

---

[2] Plaintiff also claims that Anderson sexually assaulted other young women who were not WSU students. However, there is no evidence that WSU or SAE/Washington Beta had notice of these prior assaults which were not criminally charged or otherwise reported.

[3] The OEO later became the CRCI. ECF No. 61 at 1.

[4] The Court uses a pseudonym to protect the privacy interests of the alleged victim who is not a party to this case.

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 7

1    at 2.  Due to a change in staff, it took WSU ten months to complete an

2    investigation of Jane Doe's allegations against Anderson.  ECF No. 61 at 2, ¶ 5.

3    Ultimately, the OEO investigator determined that he could not conclude that

4    Anderson had violated any university policy because Jane Doe and Anderson

5    offered contradictory statements about what had occurred without any

6    corroborating evidence.  ECF Nos. 61 at 2, ¶ 5; *see also* 61-1 at 7-8, ¶¶ 12-15; 10,

7    ¶ 23.  Jane Doe also had some difficulty recalling events due to a medical

8    condition that she suffered from.  *Id.* at 8, ¶ 15.

9         On April 14, 2022, Plaintiff filed this action against Defendants Anderson,

10   WSU, SAE, and Washington Beta.  ECF No. 1.  By amended complaint, Plaintiff

11   alleged that WSU violated Title IX of the Education Amendments of 1972, 20

12   U.S.C. § 1681 et seq., the Washington Law Against Discrimination (WLAD), and

13   committed the torts of negligence and negligent infliction of emotional distress.

14   ECF No. 26 at 8-12.  As to SAE and Washington Beta, Plaintiff asserted negligent

15   supervision and training and negligence.  *Id.* at 14-18.  WSU, SAE, and

16   Washington Beta now bring these respective motions for summary judgment.  ECF

17   Nos. 58, 63.

18   //

19   //

20   //

# DISCUSSION

## I.    Summary Judgment Principles

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott*, 550 U.S. at 378. Summary judgment will thus be granted "against a party who

1  fails to make a showing sufficient to establish the existence of an element essential

2  to that party's case, and on which that party will bear the burden of proof at trial."

3  *Celotex*, 477 U.S. at 322.

4  **II.    WSU's Motion for Summary Judgment**

5      WSU asserts that the doctrine of sovereign immunity blocks Plaintiff's state

6  law claims and argues that Plaintiff has not met her burden to establish a violation

7  of Title IX.  The Court agrees and grants WSU's motion for summary judgment.

8      **A.    Sovereign Immunity**

9      Plaintiff claims that WSU committed the torts of negligence, negligent

10  infliction of emotional distress, and violated WLAD.  ECF No. 21 at 9-12.  WSU

11  moves for summary judgment on the basis that Eleventh Amendment immunity

12  protects it from these state law claims. ECF No. 58 at 9-10.  In response, Plaintiff

13  argues that WSU misapplies the doctrine because (1) "Defendant owed a duty to

14  Plaintiff under common law principles" and (2) "Plaintiff's claim survives under

15  the legislative intent and special relationship exceptions."  ECF No. 68 at 15.

16      Under the Eleventh Amendment, "[t]he Judicial power of the United States

17  shall not be construed to extend to any suit in law or equity, commenced or

18  prosecuted against one of the United States by Citizens of another State, or by

19  Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  "To respect

20  the broader concept of immunity, implicit in the Constitution," the United States

Supreme Court has "extended a State's protection from suit [under the language of the Eleventh Amendment] to suits brought by the State's own citizens." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267-68 (1997) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). The doctrine of sovereign immunity applies wherever the State or sovereign entity is the true party in interest. *Jamul Action Comm. v. Simermeyer*, 974 F.3d 984, 994 (9th Cir. 2020). A plaintiff can overcome the Eleventh Amendment bar only under three limited exceptions: (1) congressional abrogation, (2) waiver by the State consenting to suit in federal court, and (3) *Ex parte Young* suits seeking prospective injunctive relief against state officials for ongoing violations of federal law. *See Miguleva v. Wash. State Dep't of Nat. Res.*, --- F. Supp. 3d ----, 2023 WL 3079399, at *2 (E.D. Wash. Apr. 25, 2023) (slip op.). The State bears the burden of establishing immunity. *ITSI TV Prods., Inc. v. Agric. Assocs.*, 3 F.3d 1289, 1291 (9th Cir. 1993).

Plaintiff does not dispute that WSU is an arm of the State of Washington and that the State is therefore the true party in interest. *See Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007). However, Plaintiff contends that the Eleventh Amendment is inapplicable because her tort claims derive from common law principles and the legislature intended to allow members of a protected class to be exempt from the public immunity doctrine. ECF No. 68 at 15. Respecting Plaintiff's first argument that WSU owed her a common law duty, that is not a

1    recognized category of exception under the Eleventh Amendment. *Miguleva*, 2023

2    WL 3079399 at *2. As to Plaintiff's second argument, that the legislature intended

3    to preserve her to sue the government despite the public immunity doctrine, that

4    argument is irrelevant, because, as WSU correctly notes, the sovereign immunity

5    doctrine and the public immunity doctrine are different. ECF No. 74 at 2.

6    Tellingly, the cases Plaintiff discusses in support of these arguments are all state

7    court decisions. *See, e.g.*, ECF No. 68 at 15. As it stands, the State of Washington

8    has not waived its sovereign immunity for tort claims filed in federal court.

9    *McConnell v. Critchlow*, 661 F.2d 116, 117 (9th Cir. 1981) ("Washington's waiver

10    of immunity in its own courts does not waive its immunity in the federal courts.").

11        As WSU concedes, Congress has abrogated its sovereign immunity under

12    Title IX. ECF No. 58 at 10, n.4. Accordingly, the Court dismisses Plaintiff's state

13    law claims pursuant to the Eleventh Amendment and proceeds to consider the

14    merits of her Title IX claims.

15        **B.    Title IX Claims**

16        Plaintiff brings two categories of Title IX claims: a pre-assault claim and an

17    individual private cause of action. ECF No. 68 at 6-10. The Court finds that

18    neither of these claims can survive WSU's motion for summary judgment.

19        **i.    Pre-Assault Claim**

20        Under Title IX, "No person in the United States shall, on the basis of sex, be

excluded from participation in, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  In *Karasek v. Regents of Univ. of California*, the Ninth Circuit Court of Appeals recognized that plaintiffs may have a "pre-assault" claim under Title IX.  956 F.34d 1093, 1112 (9th Cir. 2020).  There, the Court held that pre-assault claims may survive a motion to dismiss if the plaintiff plausibly alleges that:

> (1) [the] school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment that was known or obvious, (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.

*Id.* (internal quotation marks and citations omitted).

In determining whether a school maintained "a policy of deliberate indifference" for pre-assault claims, "the focus is on whether the university maintained an official or de facto policy of deliberate indifference to reports of sexual misconduct or an obvious risk of sexual misconduct." *Barlow v. Washington*, No. 21-35397, 2022 WL 2256318 at *1 (9th Cir. June 23, 2022). Thus, a university need not have actual knowledge of a specific conduct violation. *Id.*; *see also Karasek*, 956 F.3d at 1113 (rejecting the concept that a plaintiff's harassment needs to exist in a specific school program and holding that a plaintiff

1    may maintain a pre-assault claim "even when a school's policy of deliberate

2    indifference extends to sexual misconduct occurring across campus."). A school

3    maintains a policy of deliberate indifference when its actions "amount to an

4    official decision . . . not to remedy a violation." *Karasek v. Regents of Univ. of*

5    *Calif.*, 500 F. Supp. 3d 967, 984 (N.D. Cal. 2020) (quoting *Gebser v. Lago Vista*

6    *Indep. Sch. Dist.*, 524 U.S. 274, 291 (1998)).

7        Cases finding that universities have embraced a policy of deliberate

8    indifference to sexual misconduct demonstrate why Plaintiff's pre-assault claim

9    here is deficient. In *Karasek*, the Ninth Circuit remanded the case for the district

10   court to consider whether the University of California (UC) maintained a policy of

11   deliberate indifference. 956 F.3d at 1113. The amended complaint included a

12   report by the California State Auditor which found that, over a five-year period,

13   UC had resolved over 75% of Title IX complaints by informal, early dispute

14   resolution processes, even though UC's former Title IX officer publicly stated that

15   she did not believe early dispute resolution processes were appropriate for

16   resolving sexual assault claims. *Id.* at 1113-14. Additionally, there was suspicion

17   that UC was using these informal dispute methods to skirt a federal reporting

18   requirement that would otherwise require them to annually publish the criminal

19   sexual offenses reported to campus authorities. *Id.* at 1114. However, the Court

20   qualified its ruling by adding that the case was in the posture of a motion to

1    dismiss and that the causal link between a plaintiff's harassment and the school's

2    deliberate indifference to separate incidents of harassment remained tenuous. *Id.*

3    On remand, the district court found that UC maintained a *de facto* policy of

4    indifference, citing the contradiction between UC's use of informal processes and

5    its public statements; alleged desire to believe it did not need to report complaints

6    resolved by informal processes; failure to update complainants on the progress of

7    their case and to timely complete investigations; and failure to educate students

8    and staff on responding to assault claims. *Karasek*, 500 F. Supp. 3d at 985.

9          Similarly, in *Czerwienski v. Harvard Univ.*, the district court identified a

10   policy of deliberate indifference where multiple female graduate students in the

11   Anthropology Department alleged sexual harassment and abuse by male professors

12   in the Department. --- F. Supp. 3d ----, 2023 WL 2763721 at *23. The court noted

13   that investigative journalism established that Harvard had discouraged students

14   from filing formal complaints against the offending professor, failed to perform

15   formal investigations, and declined to take action to prevent continued harassment

16   and retaliation against women who came forward. *Id.* Additionally, the plaintiffs

17   maintained that Harvard inadequately trained faculty members regarding their

18   reporting requirements. *Id.*

19         Here, the facts before the Court do not support a finding of deliberate

20   indifference. Plaintiff alleges that WSU was aware of prior allegations of assault

1  against Anderson, that it took WSU an inordinate amount of time to resolve Jane

2  Doe's claim, and that the sanctions imposed were insufficient to deter Anderson's

3  future misconduct.  ECF No. 68 at 3.

4       Whatever staffing shortages that might have plagued its CRCI office, the

5  Court agrees it was unacceptable for WSU to take ten months—basically the entire

6  school year—to investigate Jane Doe's sexual assault claim against Anderson.

7  However, delay alone is insufficient to establish that WSU maintained a policy of

8  deliberate indifference at the summary judgment stage.  A delay only amounts to

9  deliberate indifference "if it prejudices the plaintiff or [represents] a deliberate

10 attempt to sabotage the plaintiff's complaint or its orderly resolution." *Karasek*,

11 956 F.3d at 1106 (quoting *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th

12 Cir. 2006) (internal quotations and brackets omitted)).  Plaintiff has not explained

13 how the delay prejudiced her or sabotaged her claim, particularly where Jane Doe's

14 claim was resolved nearly a year before her first assault.  *See* ECF No. 61-1 (Doe

15 report dated February 8, 2019; Plaintiff was assaulted January 29 and February 7,

16 2020).  Indeed, with respect to Plaintiff's claims, WSU met with her on the first

17 day she returned from break and acted promptly to secure her well-being by

18 increasing patrols, allowing for accommodations, and trespassing Anderson from

19 campus.

20      More importantly, unlike the complainants in *Karasek* and *Czerwienski*,

Plaintiff does not dispute the methods used to investigate and resolve Jane Doe's claim or her claim, nor does she dispute the ultimate conclusion of Jane Doe's claim. Instead, her contention seems to be that the investigation should have put WSU on notice of Anderson's criminal tendencies and that he should have been closely supervised, made to complete sexual harassment training, or expelled. *See* ECF No. 68 at 4. However, lacking any evidence or argument that WSU's resolution of Jane Doe's claim was deficient, the Court cannot say it was unwise of WSU to elect not to sanction Anderson in one of the ways suggested by Plaintiff prior to her assault or that the failure to do so amounted to WSU maintaining a policy of deliberate indifference when the results of that investigation did not establish that Anderson was guilty of assault.[5] *Celotex*, 477 U.S. at 322 (Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Because Plaintiff has not established that a genuine issue of material fact exists as to WSU's maintenance of

---

[5] It appears that Anderson was already on disciplinary probation at the time of Plaintiff's assault. ECF No. 62-7 at 3. However, it is unclear to the Court whether this probation was due to Anderson's prior contact with Jane Doe or instead pertained to some other campus conduct violation.

1  a *de facto* policy of deliberate indifference, the Court grants summary judgment to

2  WSU on the pre-assault claim.

### ii.    Individual Claim

4  Plaintiff also brings an individual claim under Title IX.  The right to be free

5  of discrimination on the basis of sex under Title IX is enforceable through an

6  implied private right of action, and damages are available as a remedy.  *See*

7  *Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 65 (1992).  The Supreme Court

8  has held that, under certain circumstances, recipients of federal funds may be held

9  liable under Title IX for student-on-student sexual harassment.  *See Davis v.*

10 *Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).  A school district that

11 receives federal funds may be liable for student-on-student harassment if the

12 district (1) had actual knowledge of the harassment, (2) the harasser was under the

13 district's control, (3) the harassment was based on the victim's sex, (4) the

14 harassment was "so severe, pervasive, and objectively offensive that it effectively

15 bar[red] the victim's access to an educational opportunity or benefit[,]" and (5) the

16 district was deliberately indifferent to the harassment.  *Id.* at 650.

17 As with the pre-assault claim, the "deliberate indifference" prong here also

18 poses a barrier to Plaintiff's individual Title IX claim.  Deliberate indifference

19 requires a "clearly unreasonable" response to harassment, *Davis*, 526 U.S. at 648,

20 not one that is merely "negligent, lazy, or careless," *Oden*, 440 F.3d at 1089.  The

1    actions must have "amounted to an official decision not to remedy the

2    discrimination." *Karasek*, 956 F.3d at 1105 (quotation marks and citations

3    omitted). For example, in *Grabowski v. Ariz. Board of Regents*, the Ninth Circuit

4    determined that the plaintiff, who was bullied by his teammates for his sexual

5    orientation, had sufficiently alleged deliberate indifference where he claimed that

6    his defendant coaches were dismissive of his complaints during his meeting with

7    him, denied knowledge of the bullying, said he "[did] not fit in" with the

8    "atmosphere" they were trying to establish on the team, and then dismissed him

9    from the team. 69 F.4th 1110, 1115 (9th Cir. 2023); *id.* at 1121.

10        Here, WSU was not deliberately indifferent to Plaintiff's individual claims

11    of assault. To the contrary, school officials met with Plaintiff as soon as possible,

12    were responsive in their e-mail correspondence with Plaintiff, made interim

13    accommodations for Plaintiff, increased security patrols, and trespassed Anderson

14    from the property all within forty-eight hours of their first meeting with Plaintiff.

15    Additionally, even after Anderson was trespassed and indicated his intent to

16    transfer schools, WSU continued to accommodate Plaintiff by allowing her to

17    move to a different dorm. Even taking these facts in the light most favorable to

18    Plaintiff, it cannot be said that WSU's response was clearly unreasonable or

19    negligent. Accordingly, the Court dismisses Plaintiff's Title IX claim and grants

20    WSU's motion for summary judgment.

1    **III.    Fraternities' Motion for Summary Judgment**

2        Also before the Court is SAE's and Washington Beta's joint motion for

3    summary judgment.  ECF No. 63.  As to the defendant fraternities, Plaintiff

4    brought claims of (1) negligence and (2) negligent supervision and training.  ECF

5    No. 21 at 14-17.  The Court grants summary judgment to the fraternities on these

6    claims.

7        **A.    Negligence Claim**

8        Plaintiff argues SAE and Washington Beta were negligent because they

9    breached their duty to protect against the reasonably foreseeable criminal acts of

10   Anderson. ECF No. 71 at 6-7.  Specifically, she maintains that they knew about

11   the incidents of verbal and physical harassment occurring between Anderson and

12   Plaintiff prior to the sexual assaults and that they were aware of prior allegations of

13   sexual assault by Anderson and failed to take appropriate remedial action.  *Id.*

14   Construing Plaintiff's pleadings liberally, she appears to allege that a duty existed

15   by virtue of the SAE and Washington Beta's special relationship with Anderson

16   under § 315 or a duty to take charge under § 319.  *See id.* (referencing the special

17   relationship exception under § 315 but citing § 319); *see also* Restatement

18   (Second) of Torts §§ 315, 319 (Am. Law Inst. 1965).  Alternatively, Plaintiff

19   argues in passing that she was a social guest or invitee of SAE and Washington

20   Beta, who owed her certain duties under premises liability doctrines.  ECF No. 71

at 9.

"Generally, there is no duty to prevent a third party from intentionally harming another unless a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct." *R.K. v. United States Bowling Cong.*, -- Wash. App. ---, 531 P.3d 901, 906 (2023).  A special relationship exists under § 315 where "a definite, established, and continuing relationship exists between the defendant and the third party." *Konicke v. Evergreen Emergency Servs., P.S.*, 16 Wash. App. 2d 131, 137 (2021). Common examples of special relationships arising between the liable party and the foreseeable victim include "the relationships between schools and their students, innkeepers and their guests, common carriers and their passengers, and hospitals and their patients." *H.B.H. v. State*, 192 Wash.2d 154, 169 (2018); *see also R.N. v. Kiwanis Int'l*, 19 Wash. App. 2d 389, 406 (2021) ("Special tort duties are based on the liable party's assumption of responsibility for the safety of another.").  When a special relationship is found to exist, "the party owing a duty must use reasonable care to protect the victim from the tortious acts of [the] third part[y]." *H.B.H.*, 192 Wash.2d at 169.

By contrast, a "take charge" duty arises under § 319 under a narrower set of circumstances.  *See Volk v. DeMeerleer*, 187 Wash.2d 241, 259-66 (2016) (distinguishing § 319 and § 315).  § 319 imposes a duty to "take charge of a third

person whom [the liable party] knows or should know to be likely to cause bodily harm to others if not controlled." "[T]he majority of Washington law discussing § 319's take charge duty relates to the relationship between parole officers and parolees." *Barlow v. Washington*, C20-5186 BHS, 2021 WL 2036704 at *7 (W.D. Wash. May 21, 2021) (unreported); *see also Volk*, 187 Wash.2d at 264 ("[A] take charge duty to act for the benefit of reasonably foreseeable victims exists in certain relationships, including the parole officer/parolee relationship, the probation officer/probationer relationship, and the corrections officer/community custody offender relationship.").

Plaintiff seems to allege that SAE and Washington Beta either had a special relationship with Anderson under § 315 or a duty to take charge under § 319. ECF No. 71 at 8. The Court is unwilling to expand the doctrine of § 319 beyond the narrow contours set by Washington courts, but assumes without deciding for purposes of summary judgment that SAE and Washington Beta's concession that they "had an established relationship with Anderson" is a functional admission that there was a special relationship between Anderson and the organization(s) under § 315. ECF No. 63 at 13. [6]

---

[6] The Court notes that Washington courts have not passed on the issue of whether panhellenic organizations are in a special relationship with their members,

1    Even assuming the existence of a special relationship, however, Plaintiff has

2    not set forth specific facts establishing that a genuine issue of fact remains as to

3    SAE and Washington Beta's knowledge of the risk of harm which Anderson posed

4    to young women at WSU. *Anderson*, 477 U.S. at 256.  To succeed on a claim for

5    negligence arising out of the special duty exception, a plaintiff must demonstrate

6    that Anderson's was "reasonably foreseeable, [meaning it was] based on more than

7    speculation or conjecture."  *Boy 7 v. Boy Scouts of Am.*, No. CV-10-449-RHW,

8    2011 WL 2415768, at *2 (E.D. Wash. June 13, 2011) (citing *Kaltreider v. Lake*

9    *Chelan Comty. Hosp.*, 153 Wash. App. 762 (2009)).  In resolving motions for

10    summary judgment, the Court will not weigh the evidence presented or make

11    credibility determinations, but neither will it blindly accept unsupported

12    allegations. *Fuller v. Idaho Dep't of Corr.*, 865 F.3d 1154, 1161 (9th Cir. 2017);

13    *see also Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007)

14    ("Conclusory, speculative testimony in affidavits and moving papers is insufficient

15    to raise genuine issues of fact and defeat summary judgment.").  Evidence must be

16    presented in a form which would be admissible at trial.  *Orr*, 285 F.3d at 773.

17    _____

18    and that, barring the defendant fraternities' concession of the issue, Plaintiff would

19    likely be unable to prove the existence of a special relationship absent certification

20    of the question to the Washington State Supreme Court.

Plaintiff states in a conclusory fashion that other members of the fraternity were aware of Anderson's abusive verbal and physical conduct.  *See* ECF No. 21 at 3-4, ¶¶ 2.7-2.9.  However, there is a dearth of evidence in the record to support that SAE and Washington Beta members were aware of Anderson's prior conduct such that they would have had an occasion to sanction Anderson accordingly (supposing, of course, that there was a special relationship in the first instance).  The only evidence both parties produced respecting the fraternity's knowledge of Anderson's prior acts came from Plaintiff's deposition.  *See* ECF Nos. 60-1, 70-1.  Plaintiff did not depose or obtain the declaration of any fraternity member.  At her deposition, Plaintiff disclaimed that any member had witnessed Anderson become physically violent with her:

> Q.  All right.  Anyone in the fraternity that witnessed this incident?[7]
>
> A.  Nobody witnessed it, but people definitely heard it.
>
> Q.  Okay.  And other than the fact that people in the fraternity heard it, did you report it to anyone in the fraternity?
>
> A.  I didn't report it, no.

---

[7] The incident referred to is the one where Anderson grabbed Plaintiff's arm and threw a trashcan at her.  As aforementioned in the Background section of this order, Plaintiff also did not clarify whether anyone saw Anderson shove her into the metal door at the fraternity.

1    ECF No. 60-1 at 22-23.

2         Plaintiff's complaint sweepingly alleges that fraternity members were aware

3    of Anderson's verbal and physical outbursts, claiming that "Anderson was

4    witnessed by other fraternity members[ ] verbally harassing, yelling, and pushing

5    Plaintiff" and that the vice president of the club had intervened in a handful of their

6    arguments "to tell them 'to stop yelling at each other, this is getting ridiculous.'"

7    ECF No. 21 at 4, ¶¶ 2.7-2.8.  But at the summary judgment stage, mere allegations

8    no longer suffice to defeat a dispositive motion.  Plaintiff did not produce any

9    evidence or testify at her deposition that other members were aware of Anderson's

10   verbal or physical harassment.  Moreover, the quote in the complaint—apparently

11   from the vice president of Washington Beta—lacks any attribution to a declaration

12   or other document in the record.  Accordingly, the Court dismisses the negligence

13   claims against the defendant fraternities insofar as they concern Plaintiff's reports

14   of verbal and physical harassment.

15        A closer question exists as to whether Plaintiff can prove that the fraternity

16   harbored any knowledge regarding Anderson's past sexual assaults.  Although she

17   did not produce any affirmative testimony from members of the fraternity averring

18   that they knew of Anderson's proclivities, she herself offered some equivocal

19   deposition testimony that SAE/Washington Beta were aware of the past allegations

20   against Anderson, albeit in a form that may be inadmissible at trial.  *See* ECF No.

60-1 at 45, 47 (testifying to the contents of a police report—which Plaintiff did not produce for the Court in her response motion—which apparently suggests that the fraternity knew of a prior assault allegation against Anderson).  However, even giving Plaintiff the benefit of the doubt on the issue of foreseeability does not turn the tides in her favor because the issue of causation remains a hurdle.  *See* Barry A. Lindahl, *Modern Tort Law: Liability and Litigation* § 3:2 (May 2023) ("The four classic elements which comprise a cause of action for negligence are: duty; breach of duty; causation; and damages.").

Causation is tenuous at best.  Plaintiff alleges the sexual assaults took place outside of Washington Beta housing, in her dorm room.  ECF No. 71 at 4.  Plaintiff also alleges that she transferred to WSU specifically because of Anderson, that she knew of the prior allegations against Anderson, and that she even attended a court hearing to support him against one such allegation.  *See* ECF No. 60-1 at 14, 19-20.  Given these stipulated facts, it is unclear what action SAE or Washington Beta could have taken—including terminating Anderson's membership—to prevent the assaults of Plaintiff.[8]  Accordingly, the Court dismisses the negligence claims

---

[8] At her deposition, Plaintiff appeared to claim that SAE and Washington Beta should have "got[ten] [Anderson] kicked . . . out of WSU."  ECF No. 60-1 at 47.  However, there is no evidence in the record to support that a student-run

against SAE and Washington Beta to the extent that it relates to Plaintiff's sexual assault claims.

As a final matter, Plaintiff's response brief argues that she was a social guest or invitee of the fraternity, and that therefore SAE and Washington Beta owed her a duty to take reasonable precautions to protect her from foreseeable harm. ECF No. 71 at 8. As an initial matter, Plaintiff was a licensee, not an invitee. *See Mihaila v. Troth*, 21 Wash. App. 2d 227, 232 (2022) (distinguishing between the two); *see also Beebe v. Moses*, 113 Wash. App. 464, 467 (2002) (same). A licensee includes a social guest. *Beebe*, 113 Wash. App. at 467. A landowner is subject to liability for physical harm caused to a licensee only if "he should expect that they will not discover or realize the danger" and "they do not know or have reason to know of the possessor's activities and of the risk involved." Restatement (Second) of Torts § 341; *see also Degel v. Majestic Mobile Manor, Inc.*, 129 Wash.2d 43, 49 (1996) ("Generally, a landowner owes trespassers and licensees only the duty to refrain from willfully or wantonly injuring them."). As such, for the reasons given above, Plaintiff cannot establish a claim of negligence against SAE and Washington Beta under a theory of premises liability.

---

organization had the authority to suspend or expel Anderson from WSU on the basis of unproven allegations.

## B.    Negligent Supervision and Hiring

Plaintiff's complaint urges that SAE and Washington Beta engaged in negligent supervision and hiring, but she appears to entirely abandon that contention in her response briefing, despite SAE and Washington Beta raising it in their motion for summary judgment. *See generally* ECF No. 71.  Thus, the Court dismisses the claim.  *See Estate of Shapiro v. U.S.*, 634 F.3d 1055, 1060 (9th Cir. 2011) (respondent abandoned claim by failing to raise it in opposition to defendant's motion for summary judgment); *see also Becker v. TIG Ins. Co.*, --- F. Supp. 3d ---, 2022 WL 17976097, at *9, n.11 (W.D. Wash. Dec. 28, 2022) (same).

## IV.    Jurisdiction

Neither of the parties addresses the problem of jurisdiction; however, the Court is forced to confront the issue as it has dismissed all claims against WSU and the fraternities.  Due to the dismissal of Plaintiff's Title IX claim against WSU and the dismissal of all claims against SAE, a foreign corporation, the Court no longer has federal question or diversity jurisdiction over this action.  *See* 28 U.S.C. §§ 1331, 1332(a).  The only remaining claims are the state law assault and battery claims against Defendant Anderson regarding the alleged sexual assault which occurred on February 7, 2020.  *See* ECF No. 57 at 19-20.  As such, the Court dismisses the remaining claims against Anderson pursuant to 28 U.S.C. § 1367(c)(3).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's motion for leave to supplement the record (ECF No. 76) was **ACCEPTED**.

2. Defendant's WSU's motion for summary judgment (ECF No. 58) is **GRANTED**.

3. Defendants' SAE's and Washington Beta's joint motion for summary judgment (ECF No. 63) is **GRANTED**.

4. The remaining claims against Defendant Anderson are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

The District Court Executive is directed to enter this Order, enter judgment, and furnish copies to counsel.  The file is **CLOSED**.

DATED October 18, 2023.



THOMAS O. RICE
United States District Judge

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT ~ 29